# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Kevin Logan,

                      Plaintiff,        Case No. 16-cv-10721

v.                               Judith E. Levy
                               United States District Judge
Township of West Bloomfield, Eric
Beauchamp, Gary Crimaldi, Bruce      Mag. Judge Stephanie Dawkins
Eck, and Charles Woodward,        Davis

                      Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [20], DENYING AS MOOT PLAINTIFF'S MOTION IN LIMINE [29], AND DENYING AS MOOT PLAINTIFF'S MOTION FOR APPOINTMENT OF A <u>SPECIAL MASTER [36]</u>

This case stems from plaintiff's dissatisfaction with the existence and allegedly unlawful enforcement of mold regulations in West Bloomfield Township. Plaintiff's claim, which includes eight counts ranging from First Amendment retaliation to defamation, is one of several ongoing or concluded legal proceedings all stemming from the same underlying situation. This matter is before the Court on defendants' motion for summary judgment on all eight counts. The Court heard oral

argument on March 22, 2018. For the reasons set forth more fully below, defendants' motion is GRANTED.

## I.     Background

Fundamentally, plaintiff alleges that individuals within West Bloomfield Township unlawfully withheld a building permit to do renovation work on his property. The core of plaintiff's arguments are twofold: first, that West Bloomfield Township's mold remediation requirements are constitutionally invalid; and second, that defendants' enforcement of the Township's mold remediation requirements with respect to plaintiff was unlawful because it was retaliatory. Defendants assert their building construction codes are constitutionally valid, their treatment of plaintiff was entirely in accordance with the governing construction ordinances in place in the Township, and their actions were not motivated by retaliation.

The factual record in the case is voluminous. However, plaintiff's written and oral argument provided limited, if any, direction to the Court to assist in locating evidence to support his claims. The Court has no duty to scour the record to find factual support for a party's claims. *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008)

("It is not the district court's . . . duty to search through the record to develop a party's claims; the litigant must direct the court to evidence in support of its arguments before the court.") The Court reviewed the information put forward by both parties and allowed both parties to provide supplemental briefing to clarify the factual support for their arguments. What follows is a brief recitation of the relevant timeline of disputed events.

On December 12, 2014, plaintiff purchased the property ("Littletell") involved in the present dispute. The property was bank-owned before plaintiff purchased it. West Bloomfield Township code official and plumbing inspector Charles Woodward conducted several routine vacant property inspections in 2014, before and after plaintiff purchased Littletell. The first time mold was allegedly identified on the property was during one of those inspections: on August 25, 2014, Woodward observed a substance that appeared to be mold on the new drywall and a recently demolished wall in a family room area.[1] (Dkt. 20-2 at 9.) Another routine inspection took place on October 2, 2014; neither

---

[1] Woodward testified in his deposition to having identified the mold during an August inspection. The property log does indicate any identified mold until December 18, 2014. (Dkt. 20-4 at 2–3.)

the property log nor the vacant property compliance request issued to the bank following that inspection indicated a problem with mold. (Dkt. 20-4 at 3–4; Dkt. 20-5 at at 2–3.)

On December 18, 2014, Woodward conducted another routine property inspection. After this inspection, the property log indicated "mold visible on new drywall and recently demoed wall in family room." (Dkt. 20-4 at 3.) The accompanying vacant property compliance request, dated December 19, 2014, states "[m]old in home, required a licensed contractor. Mold visible on new drywall in family room." (Dkt. 20-5 at 5.) This inspection was completed, and these records produced, prior to any meeting between plaintiff and defendants.

On December 19, 2014, plaintiff went to the West Bloomfield Township offices to file a permit to remove closets between two bedrooms. (Dkt. 20-6 at 11.) It was during this visit to the offices that plaintiff met Woodward, and when he was alerted that "there was mold in the house and that it was hazardous and that [plaintiff] had to get it remediated." (*Id.*) Plaintiff indicated that it would be difficult to remediate the mold because the roof was leaking; Woodward initially indicated that no one would be going in the house and no permits would issue until the mold

was remediated, but ultimately agreed to issue a permit for roof work in advance of the remediation. (*Id.*) Plaintiff states that during the conversation, Woodward was "combative and belligerent" and was unwilling to clarify for him what the precise requirements were for the mold to be satisfactorily remediated. (*Id.*)

In the months following the "confrontational" conversation with Woodward, plaintiff applied for and received several building permits, including for roof repairs, a furnace replacement, duct work, window replacements, electrical work, plumbing, and bath venting. (Dkt. 20-11 at 1–13.) On February 3, 2015, plaintiff "decided [he] was going to move into the house and . . . wanted to broaden the permit." (Dkt. 20-6 at 14.) On that day, plaintiff made another visit to the West Bloomfield Township offices. During that visit, defendant Gary Crimaldi "asked if [plaintiff] had worked out that mold thing with [defendant] Woodward." (*Id.*) He confirmed that he had not.

Plaintiff submitted his revised ("broadened") permit request to Crimaldi via email just prior to their meeting on February 3, 2015. Plaintiff was under the impression that the permit had been granted (*Id.*) but the Township confirms that the initial permit was not issued because

it was incomplete, and the revised permit application was not issued because the mold on the property had not yet been remediated. (Dkt. 20-13 at 6 (email from Crimaldi, stating "[t]o approve a certificate of occupancy on this property we need assurance from a professional that the property is safe for habitation.").) Plaintiff did the work on the property despite the fact that the general construction permit had not been issued. (Dkt. 20-6 at 15.)

Because plaintiff completed work that was beyond the scope of the permits that had been issued, West Bloomfield Township officials placed their first "stop work order" on the Littletell property on February 23, 2015. (Dkt. 20-4 at 3.) Plaintiff removed the "stop work orders" and continued to do work on the property. (*Id.*)

On October 12, 2015, the property log indicates that "[m]old was removed." (*Id.* at 2.) That same day, as ordered by Oakland County Circuit Court Judge Chabot, West Bloomfield Township paid for a mold inspection. (Dkt. 20-16.) The mold inspection revealed the presence of several types of mold, and indicated that "further mold remediation corrective action is necessary." (Dkt. 20-18 at 2.)

On October 28, 2015, West Bloomfield Township initiated code enforcement actions against plaintiff. (Dkt. 20-19.) On that day, plaintiff received a letter from Erik Beauchamp, the Township Code Enforcement Officer, which listed four violations of the Code of Ordinances for West Bloomfield Township. (*Id.*) Plaintiff was instructed to correct all violations prior to November 4, 2015, or "court action may be initiated." Plaintiff was also notified that he had a right to appeal the notice and order to the Construction Board of Appeals for West Bloomfield Township within 20 days of the filing of the notice. (*Id.* at 2.)

Plaintiff did not correct the violations, and on November 13, 2015, plaintiff received a summons for a court appearance on November 25, 2015 regarding property violations. Two additional summonses followed for violations of stop work orders. (Dkt. 20-20.) Plaintiff pursued several avenues to challenge the Township's mold remediation requirements, including a motion in the district court challenging the constitutionality of International Property Maintenance Code 108.1.3 and an application with the Construction Board of Appeals. Both efforts were unsuccessful. (Dkt. 20-21, Dkt. 20-22, Dkt. 20-23.) Plaintiff also filed two state court

civil suits against the Township, one of which was dismissed (Dkt. 20-24), and the second of which is pending.

## II.    Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   Analysis

### a. Count I: Violation of 42 U.S.C. § 1983 for First Amendment Retaliation against Individual Defendants and West Bloomfield Township

In Count I, plaintiff asserts that he engaged in protected conduct when he spoke out in opposition against the defendants regarding their interpretation, application, and enforcement of their ordinances, codes,

and regulations. This public comment took the form of written communications, court actions, and hearings before the Construction Board of Appeals for West Bloomfield Township. (Dkt. 1 at 33-34.) Plaintiff asserts that defendants unlawfully retaliated against him for his speech by action including, but not limited to "making false statements about [plaintiff], instituting criminal proceedings against [plaintiff], issuing fines, citations, stop work orders, and other penalties against [plaintiff], as well as withholding permits and services to the point that other persons of ordinary firmness would have been deterred from continuing to engage in [protected conduct.]" (Dkt. 1 at 39.)

The individual defendants assert that they are entitled to summary judgment because they have qualified immunity against plaintiff's First Amendment claim. "[G]overnment officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When "a defendant raises qualified immunity as a defense, the plaintiff bears the burden of

demonstrating that the defendant is not entitled to qualified immunity." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

Whether an official is entitled to qualified immunity depends on a two-pronged inquiry. "First, a court must decide whether the facts that the plaintiff has alleged or shown make up a violation of a constitutional right. . . . Second, if a plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For a right to be clearly established, the law "must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002).

In this case, plaintiff is alleging that his First Amendment rights were violated. To prove a First Amendment retaliation claim, "a plaintiff must show that (1) he was participating in a constitutionally protected activity; (2) defendant's action injured plaintiff in a way likely to chill a person of ordinary firmness from further participation in that activity; and (3) in part, plaintiff's constitutionally protected activity motivated

defendant's adverse action." *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007).

The Court will assume, without deciding, that plaintiff's activities of speaking out against the defendants and challenging their interpretation and application of building code regulations is constitutionally protected activity. The Court will further assume, without deciding, that defendants' actions including instituting criminal proceedings and issuing fines is injurious in a way that is likely to chill a person of ordinary firmness from further participation in that activity.

To satisfy the third element, plaintiff must

> "proffer evidence sufficient to raise the inference that his or her protected activity was a motivating factor for the adverse decision. Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals, may support this inference. Once a plaintiff has met his or her burden of establishing that his or her protected conduct was a motivating factor behind the adverse conduct, the burden of production shifts to the defendant. If the defendant can demonstrate that it would have taken the same action in the absence of the protected activity, it has met its burden and is entitled to summary judgment if it can show affirmatively that there is no genuine issue in dispute."

*Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 220 (6th Cir. 2004).

In this case, defendants assert that plaintiff proffers no evidence that plaintiff's speech was a motivating factor in the decisions regarding the building permit and inspections. Defendants do provide evidence that "the individual defendants did not make or participate in the decision to place the building permit on hold or withhold inspections."[2] Additionally, they proffer evidence that there was no disparate treatment because the Township required mold testing from other similarly situated property owners.[3] Finally, defendants point to evidence that the same action would have been taken even in the absence of any alleged protected conduct: plaintiff's permit was not issued because his application was incomplete. (Dkt. 20-7 at 5–6 (defendant Crimaldi's deposition testimony describing

---

[2] Defendant Woodward testified, regarding issuing permits: "I don't make those decisions" and "I can't hold anybody up from getting a permit." (Dkt. 20-2 at 15); Defendant Crimaldi testified, regarding making the decision to cease inspections until mold remediation took place: "I would guess it would have been Mr. Lipchik at the time who would have done that. I did not do that." (Dkt 20-7 at 16); Defendant Eck responded "No, I did not" when asked if he made the decision that no inspections will occur until the mold remediation resolution had been provided, and asserted that he did not know who made that decision. (Dkt 20-8 at 11, 15.)

[3] For example, defendant Crimaldi asserted in his deposition that he knew of at least two situations in the past year when an application was denied or put on hold until a mold remediation report was provided. (Dkt. 20-7 at 17.) In addition, the record contains documentation of several other Township properties from which mold remediation certification was requested, and stop work orders were put in place until mold remediation was complete. (Dkt. 20-27.)

the regular process of verifying the completeness of a building permit application).) Defendants emphasize that plaintiff admits that "he was informed on December 19, 2014, before he ever began [engaging in the allegedly protected conduct], that no permit would be issued and that no one could go into the house." (Dkt. 20-6 at 11.)[4]

Plaintiff points to an extensive email conversation between plaintiff and individual defendants to support his assertion that defendants' "prior, protected conduct was a substantial or motivating factor leading to the alleged retaliatory action." (Dkt. 20-13.) Plaintiff's brief does not direct the Court to a particular portion of the eleven-page exchange. At oral argument, plaintiff argued that the portion of the email correspondence between defendant Woodward and plaintiff, in which Woodward emphasized that his credentials would not be questioned, was sufficient circumstantial evidence for the Court to conclude that defendant's conduct was retaliatory.

---

[4] Plaintiff's testimony, in relevant part, states: "On [Dec] 19th [2014] when I met with Woodward . . . he was the one who alerted me that, you know, he – there was mold in the house and that it was hazardous and that I had to get it remediated, you know." (Dkt. 20-6 at 11.)

Plaintiff's argument that defendants "persisted in withholding [ ] services even after [the State rejected] defendants' purported legal authority for withholding such services" does not support his claim that defendants were acting in a retaliatory manner. It simply affirms that defendants cited the incorrect regulatory provision when first questioned by plaintiff.[5]

In light of this, plaintiff has failed to raise a material question of fact regarding defendants' motive for failing to issue a building permit. Defendants have proffered evidence to demonstrate that – from the first inspection of plaintiff's property after he purchased it – mold was identified and the permit was put on hold. To the extent that plaintiff engaged in protected conduct after the permit was put on hold, he has provided no evidence that his protected conduct resulted in any further retaliatory action. Defendants maintained their initial position that the permit would not issue until the mold was remediated.

---

[5] Indeed, plaintiff was ultimately prosecuted for and found guilty of a violation of an ordinance violation. Plaintiff does not seem to be arguing that defendants did not have any authority to require mold remediation during the building permit process. Instead, he seems to be arguing that the fact that low-level city officials cited the wrong code provision(s) is evidence that those individuals were acting in a retaliatory manner.

Because the Court finds no question of material fact regarding the existence of a constitutional violation, defendants are entitled to qualified immunity. Summary judgment is granted for the defendants on Count I.

> **b. Count II: Violation of Procedural Due Process and Equal Protection against defendant West Bloomfield Township**

In Count II, plaintiff alleges an intertwined web of complaints, asserting that West Bloomfield Township "deprived and interfered with [plaintiff's] property interest and his liberty interest" because it (1) accepted payment for a building permit but then wrongfully refused to provide the services called for under the Michigan statute; (2) employed inspectors who were held out to be trained in the relevant codes, but who lacked any certification or education related to mold; (3) selectively enforced provisions of the International Property Maintenance Code (IPMC); and (4) failed to comply with the procedural guidelines contained with the IPMC.

The Township asserts that it is entitled to summary judgment because it – as a municipality – cannot be held liable under a *'respondeat superior'* theory for the actions of its officers. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, it can only be held liable "if the

governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected to' such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To be liable, the constitutional violation must result from an official policy; the "plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged;" and the plaintiff must demonstrate a causal link between the municipality's action and the constitutional violation. *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013).

Therefore, a plaintiff must "(1) identify the municipal policy or custom; (2) connect the policy to the municipality; and (3) show that [plaintiff's] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 404 (6th Cir. 2010). If the record fails to demonstrate that any individual officer actually violated the plaintiff's rights, the municipality cannot be found liable, regardless of its policies. *Id.*

Defendants argue generally that plaintiff cannot establish a question of fact as to whether any individual defendant violated plaintiff's constitutional rights, and therefore under *Vereecke*, the Township cannot be liable. Defendants also argue that plaintiff fails to

identify any municipal policy or custom as the 'moving force' behind any individual defendant's action that inflicted a constitutional injury.[6]

## 1. *Procedural Due Process*

More particularly with respect to the procedural due process claim, defendants argue that plaintiff was provided with ample notice and opportunity to be heard, and therefore he cannot successfully argue that he was deprived of his alleged due process rights with respect to his building permit.

"To establish a procedural due process violation under 42 U.S.C. § 1983, [plaintiff] is required to demonstrate three elements: (1) that [he] had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that [he] was deprived of that protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford [him] adequate procedural rights before

---

[6] Plaintiff argues that he does identify a municipal policy or custom of West Bloomfield Township as the moving force behind the actions of the individual defendants that inflicted a constitutional injury – namely, that defendants had a policy of withholding inspections until building owners provided acceptable mold remediation reports. (Dkt. 23 at 25.) It is not at all clear how this alleges a policy or custom that is a moving force behind the infliction of a constitutional injury. Instead, it seems to affirm defendants' precise point: plaintiff's property was not inspected (so his building permit process was held up) because there was unremediated mold on his property – not because of any retaliatory purpose.

depriving [him] of [his] interest." *Wedgewood Ltd. Partnership I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010).

"Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a pre-deprivation hearing." *Dubuc v. Twp. of Green Oak*, 406 F. App'x 983, 987 (6th Cir. 2011). In considering whether the afforded procedural rights were adequate, the Court considers (1) "the private interest that will be affected by the official action;" (2) "the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Additionally, if there are elaborate post-deprivation procedures, less elaborate pre-deprivation procedures are required. *Dubuc*, 406 F. App'x at 987.

Defendants proffer extensive evidence that plaintiff had ample notice regarding his building permit and ordinance violations, including documentation of seven vacant property compliance request forms (Dkt. 20-5) and eleven pages of email communication between plaintiff and

Township officials. (Dkt. 20-13.) Defendants also proffer extensive evidence that plaintiff was provided with ample opportunities to be heard, including proceedings of a Construction Board of Appeals meeting (Dkt. 20-23) and an order from Oakland County Circuit Court denying plaintiff's motion requesting an order for defendants to, among other things, "cease and desist in its alleged unlawful demand for mold related permits." (Dkt. 20-24.)

Plaintiff does not dispute that defendants posted notices and communicated with him via email regarding mold remediation. Nor does plaintiff dispute that he had the opportunity to go before the Construction Board of Appeals and the Oakland County Circuit Court in order to contest defendants' actions. What plaintiff seems to be disputing is the extent to which the precise contours of the mold remediation requirements have been unclear and, in some cases, inherently contradictory. While the Court recognizes that plaintiff has been unsuccessfully navigating a complex governmental process, plaintiff's complaint is that he is unsatisfied with the lack of clarity in the process – not the lack of process itself. There is no material question of fact

regarding whether plaintiff was provided sufficient pre-deprivation notice or post-deprivation opportunity to be heard.

## 2. *Equal Protection*

With respect to plaintiff's equal protection (class-of-one selective enforcement) claim, defendants again argue "[t]here is no evidence that the Township, by any custom or policy, selectively enforced the IPMC." Plaintiff argues that he was treated differently than the previous owner of the same property, and that this establishes disparate treatment in violation of the Equal Protection Clause.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. Of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011). "Class-of-one claims are generally viewed skeptically because such claims have the potential to turn into an exercise in which juries are second-guessing the legislative process." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012). Plaintiff has the burden to show that he was treated differently than other property owners who were similarly situated in all

material respects. *TriHealth Inc. v. Bd. Of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 791 (6th Cir. 2005).

Plaintiff alleges that he has carried his burden with respect to demonstrating unlawful disparate treatment based on the fact that the prior owner of the property was not subjected to the same requirements related to mold as he was. (Dkt. 23 at 26.) It is undisputed that defendants did not require the previous owner (a bank, as it was a foreclosed property) to complete mold remediation. However, defendants do proffer evidence that many other properties were subjected to the same mold remediation requirements as plaintiff. (Dkt. 20-27.)

"Under rational basis review, the defendant 'has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data.'" *Loesel*, 692 F.3d at 465 (quoting *TriHealth*, 430 F.3d at 790). The burden falls on plaintiff to "demonstrate that a government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged government

action was motivated by animus or ill-will." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2011).

Aside from his conclusory statements related to the treatment of the previous owner, plaintiff offers no evidence to demonstrate that the Township lacked a rational basis for its actions.[7] Furthermore, plaintiff's argument that the mold remediation requirement was motivated by animus or ill-will fail here for the same reasons that they failed in the First Amendment retaliation claim. Even viewed in the light most favorable to plaintiff, the proffered evidence of animosity between plaintiff and various members of the West Bloomfield Township staff does not raise a material question of fact regarding defendants' motivation. Defendants have continuously made clear that they are requiring mold remediation on the property pursuant to their legitimate interest in public health and safety.

---

[7] To the extent that it is necessary, one obvious material difference between the previous owner (the bank) and plaintiff is that the bank was maintaining a vacant foreclosed home. Plaintiff was preparing the home for habitation. (Dkt. 20-6 at 7 (plaintiff's deposition testimony affirming that he originally purchased it as a rental but then ultimately planned to remodel and move into it).) It would be sensible for a township to more closely monitor the air quality in a home being prepared for occupancy.

Accordingly, because there is no material question of fact regarding the government's rational basis for its action, and plaintiff has failed to demonstrate animus or ill-will, summary judgement is granted to defendants on plaintiff's Equal Protection "class-of-one" selective enforcement claim.

### c. Count III: Violation of Substantive Due Process against defendant West Bloomfield Township

In Count III, plaintiff alleges that defendant West Bloomfield Township's application of the IPMC is arbitrary and capricious because "it does not bear a substantial relation to the public health, safety, morals, or general welfare." (Dkt. 1 at 57.) He also alleges that defendant's policy related to mold and air quality – particularly to the extent that it "imposes strict liability for alleged violations and such violations can result in criminal convictions based solely on the discretion of the code enforcer" is unconstitutionally void for vagueness. (Dkt. 1 at 58.)

#### 1. Plaintiff does not allege a burden on any fundamental right

Defendant argues first that plaintiff fails to even allege a valid substantive due process complaint, as he does not allege any burden on

any fundamental right. "The list of fundamental rights and liberty interests – which includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving treatment . . . is short, and the Supreme Court has expressed very little interest in expanding it." *Seal v. Morgan*, 229 F.3d 567, 574–75 (6th Cir. 2000). Plaintiff's alleged interest is limited to a property interest in his permit application fee and in his economic use of the property he purchased. (Dkt. 23 at 28.)

Defendants argue that because plaintiff fails to allege a burden on a fundamental right, the statute in question is subject only to rational basis review. *Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007). "[G]overnment action amounts to a constitutional violation only if it is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Shoemaker v. City of Howell*, 795 F.3d 553, 567 (6th Cir. 2015).

Plaintiff's complaint does not specify which particular statute is contested. However, given that plaintiff was ultimately charged with a

violation of IPMC 108.1.5, the authority under which the Township rested its authority to regulate mold, the Court assumes this is the contested statute. It states:

> "For the purpose of this code, any structure that has any or all of the conditions or defects described below shall be considered dangerous: . . . (9) a building or structure, used or intended to be used for dwelling purposes, because of inadequate maintenance, dilapidation, decay, damage, faulty construction, or arrangement, inadequate light, ventilation, mechanical or plumbing system, or otherwise, is determined by the code official to be unsanitary, unfit for human habitation, or in such a condition that is likely to cause sickness or disease."

Defendant asserts that the statute is rationally related to the legitimate government interest of protecting the public's health and safety. *See, e.g., Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 538 (1993) (identifying protecting the public health as a legitimate governmental interest).

Plaintiff's only effort to rebut this argument is to rely on a different standard for establishing a substantive due process claim – one that is specifically related to *zoning* disputes.[8] Plaintiff's dispute is not a zoning

---

[8] "[The Sixth Circuit] has previous held that substantive due process claims raised in the context of zoning regulations require a plaintiff to show "that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected

dispute, and he makes no argument for why the Court should consider the enforcement of property maintenance regulations to be analogous to zoning.[9] Accordingly, there is no material question of fact regarding a burden on one of plaintiff's fundamental rights, or regarding the rational basis for the city's implementation and enforcement of the IPMC. Summary judgment is granted in favor of defendants on this claim.

## 2. *The IPMC is not unconstitutionally vague.*

Plaintiff's complaint also alleges a void for vagueness challenge to the mold regulations. Defendants cite two cases where another federal district court rejected facial challenges to the IPMC on the basis that is was unconstitutionally vague. *Mann v. Calumet City*, No. 08-555, 2009 WL 395465 at *1 (N.D. Ill. 2009); *Smiley v. Calumet City*, No. 08-3017, 2009 WL 1381034 at *15 (N.D. Ill. 2009). Because plaintiff does not put forth any argument related to his void for vagueness challenge in his

---

interest has been deprived through arbitrary and capricious action." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

[9] Even if the standard is relevant, it is not clear that plaintiff has any recognized property interest. "[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp, Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). This entire dispute centers around the non-issuance of a building permit, which is issued (or not) at the discretion of the Township.

response, it is appropriate for the Court to consider the claim abandoned. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing cases).

To the extent that it is necessary to consider the claim on the merits, the analysis and reasoning of the N.D. Illinois court is helpful. In *Mann*, the plaintiff argued, among other things, that the phrase "in good repair" as it was used in the IPMC and as applied in the Calumet City ordinances, was unconstitutionally vague because there were "no standards to prevent arbitrary enforcement." *Mann*, 2009 WL 395465 at *13. In finding that the language was not unconstitutionally vague, the court affirmed

> "[t]here are, of course, limits to how precise language can be in the context of a housing ordinance. As other courts have recognized, specific regulations cannot begin to cover all the infinite variety of conditions that must be regulated. . . If this Court required policymakers to document the precise requirements of every repair needed on a property, the City would drown in verbiage. This is not a situation the Fourteenth Amendment requires."

*Id.* at *14.

Plaintiff argues that the IPMC does not even *mention* mold (Dkt. 1 at 24), which is an argument that defendant does not rebut. Nonetheless,

the Court finds the analysis in *Mann* to be persuasive, and follows it here. The Fourteenth Amendment simply does not require city ordinances to specify with precision every possible repair in order for them to be constitutionally valid.

Summary judgment is granted in favor of defendants on this count.

### d. Count IV: Malicious Prosecution against Individual Defendants and West Bloomfield Township

In Count IV, plaintiff alleges that defendant instituted numerous criminal proceedings against him, and that there was a lack of probable cause for "some or all" of the proceedings. (Dkt. 1 at 61.) At the time the complaint was filed, none of the proceedings had concluded. As of the date of the hearing, the four misdemeanor claims had been adjudicated – a jury returned a not guilty verdict on one claim, a guilty verdict on a second claim, and plaintiff obtained two directed verdicts in his favor on the final two claims. (Dkt. 33 at 2–3.)

"Malicious prosecution claims are 'difficult to maintain.'" *Alman v. Reed*, 703 F.3d 887, 902 (6th Cir. 2013) (quoting *Matthews v. Blue Cross & Blue Shield of Mich.*, 456 Mich. 365, 377 (1998)). To state a claim for malicious prosecution, plaintiff must show "(1) that the defendant has initiated a criminal prosecution against him; (2) that the criminal

proceedings terminated in his favor; (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions; and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews*, 456 Mich. at 378.

For the same reasons as have been articulated above, plaintiff failed to raise a material question of fact regarding malice on the part of defendants for instituting the criminal charges. Defendants have consistently maintained, from their first encounter with plaintiff to the present, that their actions have been solely motivated by their interest in the public health and safety within the Township.

Additionally, although the jury returned a not guilty verdict on one of the four claims, plaintiff points to no evidence that defendants lacked probable cause in bringing the claim against him. Furthermore, the jury *did* return a guilty verdict on one of the four claims.

Summary judgment is granted in favor of defendants on this count.

### e. Count V: Abuse of Process against Individual Defendants and West Bloomfield Township

In Count V, plaintiff alleges that "defendants have instituted numerous proceedings against [him] for improper and all ulterior

purposes." (Dkt. 1 at 62.) Plaintiff does not specify what proceedings he considers abusive, and if or how they are distinct from the criminal proceedings above. But, he alleges that defendant used them "to enforce their codes and/or regulations in an improper manner and to exact the payment of fees, fines, and other penalties against [him]." (*Id.*)

"A meritorious claim of abuse of process contemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure. . . ." *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 322 (2010). "To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose, and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Lawrence v. Burdi*, 314 Mich. App. 203, 211–12 (2016).

Defendants assert that plaintiff does not plead, much less establish with any evidence, that defendants had an ulterior purpose in any of their actions, or that they carried out any improper act. (Dkt. 20 at 35.) Plaintiff does not rebut this argument regarding the elements of the

claim.[10] (Dkt. 23 at 31.) Because plaintiff does not put forth any argument related to this claim, it is appropriate for the Court to consider it abandoned. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing cases).

Accordingly, summary judgment is granted in favor of defendants on this count.

### f. Count VI: Tortious Interference with Business Relationship or Expectancy against Individual Defendants and West Bloomfield Township

In Count VI, plaintiff alleges that defendants' individual and collective actions related to his building permit – "making false statements about the nature of the premises, the condition of the premises, the presence of toxic and/or hazardous substances at the [premises], interference [sic] with [plaintiff's] contractors, and unlawfully withholding services and/or inspections or conditioning such services and/or inspections upon [plaintiff] giving up his First Amendment rights"

---

[10] Plaintiff instead focuses his argument on the issue of whether or not the individual defendants or West Bloomfield Township are entitled to governmental immunity. Even if the Court determines that governmental immunity is not applicable, plaintiff still needs to establish that there is a material question of fact on at least one element of the claim. Having failed to point to any evidence in the record to establish this claim, no reasonable jury could find for plaintiff.

(Dkt. 1 at 64–65) – caused plaintiff to lose business expectancies associated with his property.

To establish a claim for tortious interference with a business expectancy, plaintiff must prove (1) "the existence of a valid business relationship or expectancy;" (2) "knowledge of the relationship or expectancy on the part of the defendant;" (3) "an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy;" and (4) "resultant damage to the plaintiff." *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 323 (2010).

Defendants argue that plaintiff cannot establish any of the elements of a tortious interference claim. Most significantly, defendants proffer undisputed evidence that defendants did not know of any business relationship or expectancy he had in the property. (Dkt. 20-6 at 23 (plaintiff's deposition testimony in response to the question "[d]id you tell anyone at West Bloomfield that you had a potential tenant on the line?" A: "No, I did not.").) Plaintiff's only rebuttal argument – unsupported by evidence in the record – is that "[d]efendants claim they did not know of any business relationship or expectancy. There is [sic] no affidavits or other testimony from Defendants to support this assertion."

(Dkt. 23 at 32.) Given that plaintiff himself stated in his deposition that he did not tell anyone in the Township that he had a business expectancy, the fact that the defendants do not have additional evidence of their lack of knowledge is not enough to raise a material question of fact on this issue.

To the extent that it is necessary to analyze the other elements of tortious interference, defendants additionally argue that plaintiff has no evidence that any intentional acts by defendants induced or caused a breach or termination of a business relationship or expectancy. Plaintiff's response is twofold, and weak.

First, plaintiff asserts– unsupported by evidence in the record – that he "bought this property for rental purposes and has *not ruled out renting it out*." (Dkt. 23 at 32 (emphasis added).) This statement alone confirms that there was no existing relationship or expectancy with which the defendants interfered – there was merely a hypothetical business relationship that has not materialized.

Second, plaintiff asserts only that defendants' actions of (1) misrepresenting defendant Woodward's mold inspection qualifications; (2) misrepresenting the specific legal authority the Township had to

regulate mold; (3) withholding the issuance of plaintiff's building permit; and (4) continuing to do so after the state regulatory agency clarified that the Township's authority to regulate did not come from the statute they provided to plaintiff are evidence that defendants "intentionally interfered" in a way that caused a breach or termination of a relationship. Because plaintiff himself admits that there was no valid *existing* expectancy or relationship, no rational juror could find that defendants "induced or caused a breach or termination of [a] relationship or expectancy." There was no existing relationship or expectancy to breach or terminate.

Accordingly, summary judgment is granted for the defendants on plaintiff's tortious interference claim.

### g. Count VII: Defamation against Individual Defendants and West Bloomfield Township

In Count VII, plaintiff alleges that defendants made "false statements about the condition of the [property], including the presence of toxic mold." (Dkt. 1 at 66.) He claims that the false statements prejudiced him in the ownership and enjoyment of the property, and (among other things) deprived him of the benefits and/or revenue he would have been entitled to. (*Id.*)

34

Defendants argue, most significantly, that "[t]ruth is an absolute defense to a defamation claim." *Wilson v. Sparrow Health System*, 290 Mich. App. 149, 155 (2010). The IMS Laboratory Report and accompanying deposition of inspector Todd Beekman is undisputed evidence that the property contained toxic mold.[11] (Dkt. 20-17; Dkt 20-18) The email introduction to Beekman's report states the following: "[p]lease find the attached IMS Laboratory Report which indicates amplified levels of the Pen/Asp group of mold spores in the interior air test locations. Also observed was Chaetomium and Stachybotrys aka the 'black toxic molds.' These molds are highly allergenic and toxigenic in the air at these levels." (Dkt. 20-18 at 2.)

Plaintiff's first rebuttal, that the defendants initially made the statements about the mold "having no facts, e.g. testing, samples, spore counts, etc." is irrelevant to whether or not the statement was objectively true. Plaintiff's second rebuttal, that "defendants' 'expert' testified that the so-called Black or toxic mold was well below what he believed to be

---

[11] At oral argument, plaintiff informed the Court that he was challenging the admissibility of this report through a motion *in limine*. Plaintiff did not challenge the admissibility of the report in the response to the motion, and the Court declines to consider plaintiff's motion *in limine* arguments at this stage of the proceedings.

the applicable standards," is also insufficient to raise a question of material fact. The undisputed testimony from the mold inspector is that toxic mold was present on the property. (Dkt. 20-17 at 19.) Plaintiff argues vehemently that the mere presence of mold is not indicative that the mold is dangerous – but that is not relevant to the determination of whether or not a statement is defamatory. Plaintiff alleges defamation on the basis that the Township made false statements about the *presence* of toxic mold on the property. (Dkt. 1 at 66 ("Upon information and belief, Defendants' false statements, included: Making false statements about the condition of the Littletell Property, including the presence of toxic mold.").) There is no material question of fact that independent testing of the property identified the *presence* of toxic mold on the property.

Accordingly, defendants' motion for summary judgment is granted on this count.

### h. Count VIII: Declaratory and Injunctive Relief as to defendant West Bloomfield Township's mold and/or air regulations

In Count VIII, plaintiff seeks "a declaration of his First and Fourteenth Amendment rights in the context of the applicable codes and regulations, as well as the enforcement of both by Defendant West

Bloomfield Township . . . [Plaintiff] asked that the Court determine that all Defendants must comply with his legal rights and the procedural due process requirements as further required by the U.S. Constitution." (Dkt. 1 at 69.) Because plaintiff has not demonstrated a material question of fact regarding any violation of either his First or Fourteenth Amendment rights, there is nothing for the Court to declare in his favor, nor future action for the Court to enjoin.

Accordingly, summary judgment is granted to defendants on this claim.

## IV.   Conclusion

For the reasons set forth above, defendants' motion for summary judgment is GRANTED. The case is DISMISSED WITH PREJUDICE. Additionally, given the Court's dismissal of all counts, plaintiff's motion *in limine* [29] and plaintiff's motion for the appointment of a special master [36] are DENIED AS MOOT.

IT IS SO ORDERED.

Dated: July 31, 2018                          s/Judith E. Levy
Ann Arbor, Michigan                       JUDITH E. LEVY
                                                     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2018.

s/Shawna Burns
SHAWNA BURNS
Case Manager